**PROTEC, INC., Plaintiff,**

v.

**LIFE–LIKE PRODUCTS, INC., Defendant,**

v.

**Peter CLIFFORD, Third–Party Defendant.**

**No. Civ. 96–0241–B.**

United States District Court, D. Maine.

Nov. 6, 1997.

Joel C. Martin, Petruccelli & Martin, Portland, ME, for Plaintiff.

Jerrol A. Crouter, Drummond, Woodsum, Plimpton & Macmahon, Portland, ME, Edmund O'Meally, Blum, Yumkas, Mailman, Gutman & Denick, Baltimore, MD, for Defendant.

## ORDER AND MEMORANDUM
## OF DECISION

BRODY, District Judge.

Defendant, Life–Like Products, Inc. ("Life–Like"), seeks summary judgment against Plaintiff, ProTec, Inc. ("ProTec"), on Count IV of Plaintiff's Complaint, which alleges infringement of U.S. Patent No. 5,628,-658, held by Third–Party Defendant, Peter Clifford, and by ProTec as licensee ("the Clifford patent"). Defendant further seeks summary judgment on Count I of its Counterclaim and Third–Party Complaint, alleging that the Clifford patent is invalid. For the reasons set forth below, Defendant's Motion for Partial Summary Judgment on the issue of literal patent infringement is GRANTED. Otherwise, Defendant's motion is DENIED.

## BACKGROUND

Peter Clifford, the President of ProTec, invented a product called the "Amazing Noodle Chair," a water flotation device made of mesh and "water noodles." Water noodles are cylinders of buoyant material which support a person's weight in the water. On December 7, 1995, William B. Ritchie, an attorney acting on behalf of Mr. Clifford, filed an application with the United States Patent and Trademark Office ("PTO") for a patent for this product. This application contained ten claims for a "Flotation Device Utilizing Cylindrical Foam Tubes." Subsequent to this date, in response to PTO objections concerning indefiniteness and obviousness, the application was modified in some respects. The Clifford patent (U.S. Patent No. 5,628,658) was issued on May 13, 1997.

Before the patent was issued, Life–Like manufactured and sold a product it called the "Wacky Noodle Chair." Plaintiff, who had already commenced suit against Defendant in this Court for alleged breach of a confidentiality agreement concerning the "Amazing Noodle Chair,"[1] added a count to its complaint alleging that the "Wacky Noodle Chair" infringes the Clifford patent. Defendant filed a counterclaim against Plaintiff and brought a third-party complaint against Clifford, alleging, among other things, that the Clifford patent is invalid.

## SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue of any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for summary judgment purposes, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R Civ.P. 56(c). For the purposes of summary judgment, the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## DISCUSSION

In support of its summary judgment motion, Defendant makes three arguments: first, that the Clifford patent is invalid because it is "obvious" in light of prior art; second, that the Clifford patent is unenforceable because of inequitable conduct on the part of Mr. Ritchie, and third, that even if the patent is valid and enforceable, Defendant has not infringed it. The Court addresses the validity issue first.

■ An issued patent is presumed valid. 35 U.S.C. § 282. The party challenging a patent's validity "bears the burden of proving invalidity by clear and convincing evidence." *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.,* 26 F.3d 1112, 1115 (Fed.Cir. 1994). This burden "remains with the challenger throughout the litigation." *Id.*

■ One basis for finding a patent invalid is obviousness. The Federal patent statute, 35 U.S.C. § 103 provides, in relevant part:

> A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

"Whether a reference or a combination of references renders a claimed invention obvious under 35 U.S.C. § 103 is a question of law...." *In re GPAC, Inc.,* 57 F.3d 1573, 1577 (Fed.Cir.1995). This legal determination of "obviousness," however, is based upon several underlying factual inquiries. *Id., see also, Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). These inquiries relate to: (1) the scope and content of the prior art, (2) the level of ordinary skill in the art at the time of the invention, and (3) the differences between the prior art and the claimed subject matter *Graham,* 383 U.S. at 17, 86 S.Ct. at 693; *Ryko Mfg. Co. v. Nu–Star, Inc.,* 950 F.2d 714, 716 (Fed.Cir.1991). "Such secondary considerations as commercial success, long felt but unresolved needs, [and] failure of others [to invent]" are also relevant to an obviousness determination. *Graham,* 383 U.S. at 17, 86 S.Ct. at 693.

■ The Court is persuaded that these factual inquiries preclude granting summary judgment in favor of Defendant on the issue of obviousness. While Defendant does point out similarities between prior art and the Clifford patent, Plaintiff contends that these other products do not "suggest" the "Amaz-

---

1. The proceedings pertaining to Life–Like's alleged breach of the confidentiality agreement are set forth in the Court's January 28, 1997, Preliminary injunction Order.

ing Noodle Chair," because, among other things, they all include "an incorporated buoyancy device," which the Clifford product lacks. *See* Pl.'s Opp. Def.'s Mot. Part. Summ. J. at 13. Plaintiff also notes that the examiner for the Clifford patent searched the appropriate fields. Given these considerations, the factual nature of all of the inquiries underlying any determination of obviousness, and the Clifford patent's presumed validity, the Court finds that Defendant has failed to put forth clear and convincing evidence of obviousness. Rather, there exist threshold factual issues that should be resolved by the fact finder.

The Court next addresses Defendant's claim of inequitable conduct. The parties do not dispute that in an attempt to expedite the patent process, Mr. Ritchie, Mr. Clifford's lawyer, submitted a "petition to make special," authorized by 37 C.F.R. § 1.102 and the *Manual of patent Examining Procedure* ("MPEP"), § 708.02, II, to the PTO. One of the requirements of a petition to make special is that the applicant submit a declaration alleging, among other things, that he or she "made or caused to be made a careful and thorough search of the prior art." MPEP, § 708.02, II(5). In his declaration in support of his petition, Mr. Ritchie stated that he had conducted such a search of the prior art, when in fact he had never done so. Defendant that this misstatement constitutes "inequitable conduct," thereby rendering the Clifford patent unenforceable.

■ Inequitable conduct consists of "a failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988) (citing *J.P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 1559 (Fed.Cir.1984)). "[A] false statement in a petition to make special is material if . . . it succeeds in prompting expedited consideration of the application." *General Electro Music Corp. v. Samick Music Corp.,* 19 F.3d

1405, 1411 (Fed.Cir.1994). "Gross negligence" is insufficient to compel a finding of "intent to deceive"; rather, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown Medical Consultants, Ltd.,* 863 F.2d at 876. Only after materiality and intent are established "does the decisionmaker exercise its discretion to decide whether, considering all the circumstances, inequitable conduct should be found." *Hupp v. Siroflex of America, Inc.,* 122 F.3d 1456, 1465 (Fed.Cir.1997) (citing *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 542 (Fed.Cir.1990)).[2]

■ Generally, "[t]he disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature." *General Electro Music Corp.,* 19 F.3d at 1408. More recently, the Federal Circuit has recognized a variety of ways a district court may "choose to handle the issue of inequitable conduct during a jury trial." *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1114 (Fed.Cir.1996); *see also Hupp,* 122 F.3d at 1465. These include reserving the entire issue of inequitable conduct for itself, submitting the entire issue to the jury upon agreement of the parties, or submitting only the factual questions of materiality and intent to the jury. *Hebert,* 99 F.3d at 1114; *see also, Hupp,* 122 F.3d at 1465. "Absent a clear showing of prejudice, or failure to achieve a fair trial, the district court's choice of procedure will not be disturbed." *Hebert,* 99 F.3d at 1114. Here, Plaintiff has already indicated in a motion in limine its desire for the Court, not a jury, to decide the issue of inequitable conduct. Since agreement by the parties to submit this question to the jury seems unlikely, the Court has decided to reserve the issue of inequitable conduct for itself after a full factual hearing of the relevant circumstances at trial.

■ The Court declines to order summary judgment in favor of Defendant at this

---

2. Once a finding of inequitable conduct has been made, "all the claims—not just the particular claims to which the inequitable conduct is directed—are unenforceable." *J.P. Stevens & Co.,* 747 F.2d at 1561.

stage of the proceedings on the issue of inequitable conduct. While the Court acknowledges the seriousness of Mr. Ritchie's misstatement and is disturbed by the apparent misuse of a sworn affidavit, Defendant has not established by clear and convincing evidence that this misstatement prompted "expedited consideration of the application," given Plaintiff's contention that the false statement was submitted after consideration of the patent on the merits was over. Moreover, Mr. Ritchie's "intent" in making the false statement is a disputed issue of fact.[3]

Finally, the Court turns to Defendant's contention that even if the Clifford patent is valid and enforceable, Life–Like has not infringed it, either literally or under the doctrine of equivalents. An infringement determination requires a two-step analysis. *Regents of the University of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1572 (Fed.Cir. 1997) " 'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.' " *Id.* (quoting *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir.1993)). Claim construction, the first step, is a question of law. "The second step, determining whether a particular device infringes a properly construed claim, is a question of fact...." *Id.* Indeed, a district court's "ultimate finding of infringement, as well as subordinate findings relating to proper claim construction, are issues of fact." *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468 (Fed.Cir.1993).

A finding of literal infringement occurs "when every limitation of a claim is met in the accused structure." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed.Cir.1995), *cert. denied*, — U.S. —, 117 S.Ct. 1243, 137 L.Ed.2d 326 (1997). In construing the claims, the Court looks to the claim language, the specification, the prosecution history, and if necessary, extrinsic evidence. *Id.* at 1216. The Court is persuaded that Defendant's product does not literally infringe the Clifford patent.

There are two claims of the patent which are at issue.[4] Claim I reads, in relevant part:

1. A flotation device ... comprising:

a flexible fabric comprising a first section of sleeve and a second section of sleeve, wherein said first section and said second section have a predetermined alignment with respect to one another; said flexible fabric further comprising: a seat section having a front end and a back end, and two side ends, wherein the back end and the two side ends of said seat section are attached to said first and second sections of sleeve, such that inserting said cylindrical foam tube into said sections of sleeve of said flexible fabric causes said cylindrical foam tube to be curved forming said seat section into a chair-shaped flotation aid which provides support for a portion of the user's body.

Claim 10 reads, in relevant part:

10. A flotation device ... which comprises ... a flexible fabric comprising:

a bottom seat having a front end and a back end, separated by two side ends, and; a seat back having an upper end and a bottom end with two side areas extending from each end, wherein the bottom end is attached to the back end of said bottom seat and the two side areas are likewise attached to the two side ends of said bottom seat to form a chair-shaped structure; and a sleeve, attached to the upper end of said seat back in a predetermined position, said sleeve forming a hollow interior such

---

**3.** In its response to Defendant's Motion for Partial Summary Judgment, Plaintiff argues that the Court should grant summary judgment in its favor on the issue of inequitable conduct. For the reasons discussed above, the Court rejects Plaintiff's argument as well.

**4.** Claims 2 and 3 are dependent on Claim 1, and cannot be infringed if Claim 1 is not infringed. *See Stutz Motor Car of America, Inc. v. Reebok*

*Int'l, Ltd.*, 909 F.Supp. 1353, 1365 n. 17 (C.D.Cal.1995), *aff'd*, 113 F.3d 1258 (Fed.Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997). Claims 4 and 9 each refer to a flotation device which requires the use of at least two cylindrical tubes. There is no dispute that Life–Like's product uses only a single cylindrical tube. Claims 5 through 8 depend, either directly or indirectly, upon Claim 4. Thus, Claims 4–9 cannot be infringed as a matter of law.

that inserting a cylindrical foam tube into said sleeve results in said chair-shaped structure providing a chair-shaped flotation device capable of supporting said user.

Claim 1 clearly provides for two sections of sleeve in a "predetermined alignment" with each other. Defendant's product utilizes one sleeve and two loops. Thus, by the plain language of the patent, Plaintiff's argument for literal infringement of Claim 1 must fail. Plaintiff argues that the loops in Defendant's product constitute sleeves. Even if the Court were to accept this argument, however, Defendant's product would still not literally infringe the Clifford patent, because Defendant's chair would then use three "sleeves." The Court also rejects the suggestion made by Plaintiff's expert, Mr. Ritchie, that a "section of sleeve" consists of half of the "actual sleeve" on Defendant's product and the loop on the corresponding side. The Court gives the term "sleeve" its ordinary meaning, "a tubular piece ... fitting over a rod or the like." Random House Webster's Dictionary (1991) at 1259. Plaintiff has not brought to the Court's attention anything in the patent or prosecution history to suggest a different definition. *See Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1578 (Fed.Cir.), *cert. denied,* 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995) ("[E]vidence extrinsic to the patent and prosecution history, such as expert testimony, cannot be relied on to change the meaning of the claims when that meaning is made clear by those documents.") As a result, the Court finds that no reasonable jury could find literal infringement with respect to Claim 1.

The Court also finds no literal infringement with respect to Claim 10. Claim 10 provides, among other things, for "a sleeve, attached to the upper end of said seat back," which forms a hollow interior "such that inserting a cylindrical foam tube into said sleeve results" in a chair-shaped structure. When a foam tube is inserted into the sleeve attached to the upper end of the seat back of

Defendant's chair, no chair-shaped structure is formed. Rather, Defendant's product does not form a chair unless the foam tube is additionally put through the two loops that are not attached to the "upper end of the seat back." [5]

Patent infringement, however, may also be established under the doctrine of equivalents, "when there is not a substantial difference between the claimed invention and the accused product." *Pall Corp.,* 66 F.3d at 1218. The doctrine of equivalents "must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* — U.S. ——, ——, 117 S.Ct. 1040, 1049, 137 L.Ed.2d 146 (1997).

The Court finds that issues of material fact exist with respect to infringement under the doctrine of the equivalents. A jury may reasonably find, with respect to each element of the claims, that the differences between the accused product and the claimed product are insubstantial.

Defendant contends that Plaintiff may not claim infringement under the doctrine of equivalents because of the "file wrapper estoppel" or "prosecution history estoppel" doctrine that provides that "claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent." *Graham,* 383 US. at 33, 86 S.Ct. at 701. "The application of prosecution history estoppel is a question of law...." *Insituform Techs., Inc. v. Cat Contracting, Inc.,* 99 F.3d 1098, 1107 (Fed.Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1555, 137 L.Ed.2d 703 (1997). The Court declines to decide the applicability of this doctrine to Plaintiff's infringement claims by way of summary judgment, however, since Defendant's contentions require further development of the evidence at trial. *See Hebert,* 99 F.3d at 1118 (declining to decide applicability

---

5. Defendant raises other arguments as to why its product does not infringe the Clifford patent. In particular, Defendant argues that its product does not have sides, whereas Plaintiff's product does. Since the Court has determined for other reasons that no literal infringement exists, it does

not reach these other arguments. *See Stutz Motor Car of America, Inc.,* 909 F.Supp. at 1366 ("[T]he absence of a single material limitation in the ... [patent] from the accused products would compel entry of summary judgment for defendant....").

of prosecution history estoppel without development of the evidence).

For the reasons set forth above, Defendant's Motion for Partial Summary judgment on the issue of literal patent infringement is GRANTED. Defendant's motion is otherwise DENIED.

*SO ORDERED.*